# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST J. ESPINOZA, | Case No.: 1:16-cv-00193- JLT |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR RELIEF FROM THE SCHEDULING ORDER TO FILE AN AMENDED COMPLAINT (Doc. 57) |
| v. | |
| MATT A. ASHE, | |
| Defendant. | |

Ernest Espinoza contends his civil rights were violated through actions taken during the course of his arrest, and following his being taken into custody, on February 24, 2015. (*See generally* Doc. 1) Plaintiff now seeks leave to amend his complaint to identify additional defendants, who are officers that he asserts were also involved with his arrest. (Doc. 57)

Because the Court finds Plaintiff failed to act with the diligence required by Rule 16 of the Federal Rules of Civil Procedure in seeking leave to amend following the pleading amendment deadline, the motion for relief from the Scheduling Order for purposes of filing an amended complaint is **DENIED**.

**I.     Background**

Plaintiff alleges that in the afternoon of February 24, 2015, he "was walking away from the inside of a parked vehicle in the south alley of Pacific Drive and Mt. Vernon Avenue" in Bakersfield, California. (Doc. 1 at 5, ¶ 23) Plaintiff asserts Officer Matt Ashe, with the California Highway Patrol,

1

responded to that location and "made contact" with Plaintiff. (*Id.*, ¶ 24) Plaintiff alleges that Officer Ashe "forcefully attempted a 'pat down,'" which caused Plaintiff to be "confused and startled." (*Id.*, ¶¶ 24, 25)

Plaintiff contends, "As a result of the confusion and fear of having someone claiming to be a law enforcement official reaching toward [his] body and shouting at him in aggressive tones, [he] reacted and attempted to protect himself." (Doc. 1 at 5-6, ¶ 26) According to Plaintiff, "within the few seconds few seconds [he] had to react and to figure out what was going on, a struggle ensued" between Officer Ashe and Plaintiff. (*Id.* at 6, ¶ 27) Plaintiff alleges he was "eventually apprehended" and transported to Kern Medical Center. (*Id.*, ¶ 28) He reports that he "suffered a broken jaw, a concussion, and lost several teeth as a result of the incident." (*Id.*, ¶ 28) He alleges that at the time of the encounter with Officer Ashe, he was "unarmed and did not pose an immediate threat of death or serious bodily injury to anyone." (*Id.*, ¶ 29)

Based upon the foregoing facts, Plaintiff identified the following causes of action in his complaint, filed against Officer Ashe, the California Highway Patrol, the State of California, the City of Bakersfield, and the County of Kern: (1) unlawful detention and arrest in violation of the Fourth Amendment; (2) excessive force in violation of the Fourth Amendment; (3) denial of medical care in violation of the Fourth Amendment; (4) denial of substantive due process; (5) ratification of unlawful acts by the municipalities; (6) inadequate training; (7) use of unconstitutional customs, practices, and policies; (8) violation of California Civil Code Section 52.1; (9) battery; (10) intentional infliction of emotional distress; and (11) negligence. (*See* Doc. 1 at 1; *see generally id.* at 6-18)

In response to the complaint, the defendants filed a motion to dismiss on March 28, 2016. (Doc. 16) The motion to dismiss was granted in part on September 16, 2016. (Doc. 38) The Court dismissed Plaintiff's claims under 42 U.S.C. § 1983 against the State of California and the CHP. (*Id.* at 38 at 15) In addition, Plaintiff's claims against Officer Ashe for the denial of adequate medical care and unlawful arrest were dismissed. (*Id.*) On October 26, 2016, the parties stipulated to the dismissal of the State of California and the CHP. (Doc. 42)

The Court held a scheduling conference with the parties on November 7, 2017, and issued an order with the applicable deadlines governing the action. (Doc. 47) "Any requested pleading

2

amendments [were] ordered to be filed, either through a stipulation or motion to amend, no later than February 1, 2017." (*Id.* at 2, emphasis omitted)

On April 3, 2017, Plaintiff filed the motion now pending before the Court, seeking to amend the Scheduling Order for purposes of filing a First Amended Complaint. (Doc. 57) Plaintiff seeks to add CHP Officers Brian Paxson, Artemio Guerra Jr., and Roberto Rodriguez as defendants in the action. (*Id.* at 3) According to Plaintiff, he "did not become aware of the involvement of these other officers until … [Officer Ashe] served two [Mobile/Video Audio Recording Systems videos] on February 17, 2017, that depicted the involvement of the three other officers who need to be named Defendants in this lawsuit." (*Id.*) Plaintiff's counsel, Kevin Conlogue, notes that he was substituted as attorney of record on April 3, and filed the motion to amend on the same day. (*Id.*)

Defendant Ashe filed his opposition to the motion on April 17, 2017, asserting "Plaintiff knew about these three officers all along," and has not been diligent in seeking leave to name them as defendants in the action. (Doc. 59 at 2) Plaintiff filed his brief in reply on April 24, 2017. (Doc. 60)

**II.     Scheduling Orders**

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). In addition, scheduling orders may "modify the timing of disclosures" and "modify the extent of discovery." <u>Id.</u> Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). As such, a scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986).

Further, scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610 (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)). Good cause must be shown for modification of the scheduling order. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a

3

> grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted). Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999). The party requesting modification of a scheduling order has the burden to demonstrate:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, and (3) that she was diligent in seeking amendment of the Rule 16 order, once it become apparent that she could not comply with the order.

*Id.* at 608 (internal citations omitted).

### III.  Discussion and Analysis

As an initial matter, the Scheduling Order in this action set forth a pleading amendment deadline of February 1, 2017, whether by stipulation or a written motion. (Doc. 47 at 3) The motion now pending before the Court was not filed until March 31, 2017. (Doc. 57) Thus, Plaintiff is required to demonstrate good cause under Rule 16 for filing an amended pleading out-of-time. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (explaining the question of whether the liberal amendment standard of Rule 15(a) or the good cause standard of Rule 16(b) apples to a motion for leave to amend a complaint depends on whether a deadline set in a Rule 16(b) scheduling order has expired). Thus, the Court must find Plaintiff satisfies the good cause requirement of Rule 16.

Plaintiff contends that "[g]ood cause exists for the Court to modify its scheduling order because Defendant did not even produce the MVARS video footage until February 17, 2017, over two weeks after the February 1, 2017 pleading amendment deadline." (Doc. 57 at 6) According to Plaintiff, he "had no way of knowing the involvement of the three additional individual officers until the MVARS video was reviewed in discovery." (*Id.*) Plaintiff asserts he "should not be kept from amending the pleadings because Defendant withheld key evidence until after the pleading amendment deadline had passed." (*Id.*)

4

On the other hand, Defendant argues that Plaintiff did not learn about the three officers for the first time in February 2017; rather, Defendant contends "Plaintiff knew about these three officers all along." (Doc. 59 at 2) In support of this contention, Defendant observes that "three months after the arrest, Plaintiff filed a citizen's complaint with CHP" in which he "named Officers Paxson, Guerra, and Rodriguez, in addition to Officer Ashe, and accused these officers of misconduct and injuring him in connection with the arrest." (*Id.*) Specifically, on May 22, 2015, Plaintiff filed a complaint in which he stated:

> The officers involved are as follows:
> 1. Matt Ashe #16947
> 2. Paxson #15898
> 3. Guerra #15255
> 4. Rodriguez #15622

(Doc. 59-1 at 18) In addition, Plaintiff indicated that he believed Paxson was an aggressor, and that he was the officer who "crushed [Plaintiff's] jaw." (*Id.*) He reported, "The officers involved lied in there [sic] report and also admitted to striking me in my right ear 3 times and in just so happens that my right jaw was crushed." (*Id.*) He continued, "The aggressors were mostly Paxson. I believe he crushed my jaw and he was yelling Oh yeah oh yeah cuz I told him I couldn't breath [sic] and he hit me with a closed fist, not elbow. Ashe hit me in the face. He admitts [sic] it. Also my doctor at the time of E.R. asks who hit him and Paxson admitted it." (*Id.*) Thus, it is clear Plaintiff knew the officers he now seeks to identify as defendants were involved with his arrest as early as May 2015.

In addition, Defendant observes that "Plaintiff, through one of his former attorneys, Melody Parman, also filed a claim for $10 million in damages with the Victims Compensation and Government Claims Board … against Officer Paxson on August 6, 2015." (Doc. 59 at 2) Notably, the Claim Form identified both Officers Ashe and Paxson as individuals who Plaintiff believed were liable for the use of excessive force in the course of Plaintiff's arrest. (Doc. 59-1 at 24-25) Nevertheless, Officer Paxson was not identified as a defendant when Plaintiff filed his complaint in this action, despite Plaintiff's belief that Paxson "crushed [Plaintiff's] jaw." (Doc. 59-1 at 18)

Further, Defendant asserts "a copy of the CHP Arrest report, prepared by one of the three officers, Officer Paxson, the day of the arrest," was produced to Plaintiff on November 28, 2017. (*Id.*) In relevant part, Officer Paxson's statement provided:

> I exited my patrol vehicle and gave several commands for the suspect to get on the ground which he refused and continued to try and free himself from the fence. Officer Ashe and I grabbed the suspect by his arms and torso and pulled him back over the top of the fence. Once the suspect was on the ground I gave several commands for the suspect to quit resisting and to show me his left hand. The suspect refused to give up his left hand. I was positioned perpendicular across his back and shoulders and struck the suspect in the right ear with my left elbow to gain compliance. The suspect continued to resist and stated that he was going to kill me. I struck him in the right ear again with my left elbow while telling him to show me his left arm. The suspect again yelled at me that he was going to kill me. I then struck him a third time in the right ear with my left elbow and was able to gain control of his left arm and **effect the arrest with the assistance of Officer M. Ashe, Officer R. Rodriguez, #156221 and Officer A. Guerra, #15255**.

(Doc. 59-1 at 12, emphasis added) Also, Officer Ashe's report reads,

> As Espinoza attempted to jump over the wrought iron fence, Espinoza became hung up on the fence lacerating his genital area. Officer Paxson and I grabbed Espinoza and attempted to pull him from the fence, As we pulled him from thy fence, Officer Rodriguez and Officer Guerra arrived on scene and assisted in pulling Espinoza from the fence and forcing him to the ground. All officers on scene were instructing Espinoza to stop resisting and place his hands to his back. Espinoza was yelling he was going to kill us and continued to resist by placing his right hand under his body. He was attempting to push off of the ground and get back to his feet. Officer Guerra placed his right knee on his upper back just below his head to keep the subject from attempting to stand up. Officer Paxson was positioned perpendicular across the back and shoulders of Espinoza. While Officer Paxson was in this position, Espinoza would not comply and stated he was going to kill Officer Paxson. Officer Paxson delivered three left elbows to the right ear of Espinoza in an attempt to gain compliance. Officer Rodriguez was able to get one handcuff onto the left arm of Espinoza. I had to forcefully pull the right arm of Espinoza from under his body. Once I had control of his right arm, Officer Rodriguez and I were able to place the second handcuff onto Espinoza and take him into custody without further incident.

(Doc. 59-1 at 9) Consequently, Defendant identifies a number of documents that indicate Plaintiff was aware of the involvement of CHP Officers Brian Paxson, Artemio Guerra Jr., and Roberto Rodriguez with his arrest as early as May 22, 2015, and that Defendants produced documents also identifying these officers in November 2016.

In reply, Plaintiff does not assert that he did not have possession of the citizen's complaint he filed or the CHP report prepared by Officer Paxson. Rather, Plaintiff focuses on the fact that "Defendant does not dispute that the MVARS videos were not produced until February 17, 2017—over two weeks after the deadline for the Parties to amend the pleadings on February 1, 2017." (Doc. 60 at 3) Plaintiff maintains that "No explanation was given for the delay in the production of the MVARS, even though a protective order was entered on January 18, 2017." (*Id.*) Nevertheless, Plaintiff fails to explain how this video added to his knowledge about those present during the events or how each acted

at that time.

Clearly, Plaintiff was aware of the involvement of CHP Officers Paxson, Guerra and Rodriguez as early as May 22, 2015. Despite this knowledge, he elected not to name these officers as defendants when he filed the complaint. In addition, Defendant produced documents as early as November 2016 that identified these officers, including the report by Officer Paxson related to the actions he took in arresting Plaintiff, "with the assistance of" Officers Guerra and Rodriguez. (*See* Doc. 59-1 at 12) Plaintiff has not demonstrated diligence in seeking leave to add these officers as defendants in the action.[1] *See Sako v. Wells Fargo Bank, Nat. Assoc.*, 2015 WL 5022326, at *2 (S.D. Cal. 2015) ("Courts have held that waiting two months after discovering new facts to bring a motion to amend does not constitute diligence under Rule 16"); *Experexchange, Inc. v. Doculex, Inc.*, 2009 WL 3837275, at *29 (N.D. Cal. Nov. 16, 2009) (delay of two months after discovering new facts, did not meet the good cause standard under Rule 16). Consequently, the Court finds the good cause requirement of Rule 16 is not satisfied.

### IV. Conclusion and Order

The Court finds Plaintiff has not been diligent in seeking leave to amend and has not met the good cause requirement of Rule 16. As a result, the inquiry ends, and the Court does not consider whether leave to amend is appropriate under Rule 15. *See Johnson*, 975 F.2d at 609; *see also Zivkovic v. Southern California Edison, Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002) ("If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted") (internal quotation marks omitted). Accordingly, Plaintiffs' motion to amend the scheduling order and for leave to file an amended complaint (Doc. 57) is **DENIED.**

IT IS SO ORDERED.

Dated: __May 1, 2017__                __/s/ Jennifer L. Thurston__
                                                      UNITED STATES MAGISTRATE JUDGE

---

[1] Even assuming Plaintiff first learned of the involvement of the officers in February 2017, which is belied by the evidence, his delay of more than six weeks following the production of the MVARS fails to support a determination that he has acted diligently in seeking leave to file an amended complaint *See Schwerdt v. Int'l Fidelity Ins. Co.,* 28 F. App'x 715, 719 (9th Cir. 2002) (delay of one month after learning of facts from a witness' deposition did not constitute diligence under Rule 16 in seeking leave to amend).